Page 2

**MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY**

| United States District Court | District of Virginia | |
|---|---|---|
| Name (under which you were convicted):  Garth A. Salkey | | Docket or Case No.:  2:15cr146 |
| Place of Confinement:  Federal Correctional Camp - Petersburg, VA | Prisoner No.:  86171-083 | |
| UNITED STATES OF AMERICA | Movant (include name under which you were convicted) | |
| v.    Garth A. Salkey | | |

## MOTION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

    United States District Court, Eastern District of Virginia, Norfolk Division

    (b) Criminal docket or case number (if you know):  2:15cr146

2. (a) Date of the judgment of conviction (if you know):
    March 10, 2016

    (b) Date of sentencing:  March 10, 2016

3. Length of sentence:  135 months

4. Nature of crime (all counts):
    (1) count in violation of Title 21 U.S.C. § 841(A)(1) and (b)(1)(A)(i)

5. (a) What was your plea? (Check one)

    (1)  Not guilty ☐          (2)  Guilty ☒          (3)  Nolo contendere (no contest) ☐

    (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?  n/a

6. If you went to trial, what kind of trial did you have? (Check one)          Jury ☐          Judge only ☐

                                        n/a

Page 3

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?  Yes ☐  No ☒

8. Did you appeal from the judgment of conviction?  Yes ☐  No ☒

9. If you did appeal, answer the following:

    (a) Name of court:   n/a

    (b) Docket or case number (if you know):   n/a

    (c) Result:   n/a

    (d) Date of result (if you know):   n/a

    (e) Citation to the case (if you know):   n/a

    (f) Grounds raised:   n/a

    (g) Did you file a petition for certiorari in the United States Supreme Court?  Yes ☐  No ☒

    If "Yes," answer the following:

        (1) Docket or case number (if you know):   n/a

        (2) Result:   n/a

        (3) Date of result (if you know):   n/a

        (4) Citation to the case (if you know):   n/a

        (5) Grounds raised:   n/a

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?

    Yes ☐  No ☒

11. If your answer to Question 10 was "Yes," give the following information:

    (a) (1) Name of court:   n/a

        (2) Docket or case number (if you know):   n/a

        (3) Date of filing (if you know):   n/a

(4) Nature of the proceeding:   n/a

(5) Grounds raised:   n/a

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?   Yes ☐  No ☒

(7) Result:   n/a

(8) Date of result (if you know):   n/a

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court:   n/a

(2) Docket or case number (if you know):   n/a

(3) Date of filing (if you know):   n/a

(4) Nature of the proceeding:   n/a

(5) Grounds raised:   n/a

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?   Yes ☐  No ☒

(7) Result:   n/a

(8) Date of result (if you know):   n/a

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1) First petition:   Yes ☐  No ☒

(2) Second petition:   Yes ☐  No ☒

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:   I only retained ineffective assistance of counsel and prosecutorial misconduct as appellate rights according to plea agreement.

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the <u>facts</u> supporting each ground.

GROUND ONE:   Ineffective Assistance of Counsel - Counsel erroneously advised to induce acceptance of Plea Agreement to Criminal Complaint. Cousel failed to adequately assist Petitioner.
(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

In Support of Memorandum of Law

(b) Direct Appeal of Ground One:

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❑   No ☒

    (2) If you did not raise this issue in your direct appeal, explain why:

        n/a

(c) Post-Conviction Proceedings:

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ❑   No ☒

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:   n/a

    Name and location of the court where the motion or petition was filed:   n/a

Docket or case number (if you know):  n/a

Date of the court's decision:  n/a

Result (attach a copy of the court's opinion or order, if available):  n/a

(3) Did you receive a hearing on your motion, petition, or application?

　　Yes ☐　No ☒

(4) Did you appeal from the denial of your motion, petition, or application?

　　Yes ☐　No ☒

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

　　Yes ☐　No ☒

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:  n/a

Docket or case number (if you know):  n/a

Date of the court's decision:  n/a

Result (attach a copy of the court's opinion or order, if available):  n/a

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:　No direct appeal rights

GROUND TWO:　Ineffective Assistance of Counsel – Lying to Defendant by asserting that there was no way to challenge the drug amount and that pre-trial motions are not available without trial and withholding of material fact.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

In Support of Memorandum of Law

**(b) Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☒

(2) If you did not raise this issue in your direct appeal, explain why:

No direct appeal rights

**(c) Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐   No ☒

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:   n/a

Name and location of the court where the motion or petition was filed:  n/a

Docket or case number (if you know):   n/a

Date of the court's decision:       n/a

Result (attach a copy of the court's opinion or order, if available):   n/a

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐   No ☒

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐   No ☒

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐   No ☒

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:      n/a

Docket or case number (if you know):     n/a

Date of the court's decision:        n/a

Result (attach a copy of the court's opinion or order, if available):    n/a

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:　No direct appeal rights.

**GROUND THREE:** Ineffective Assistance of Counsel - Representation fell so far below standard that if it had not been for Counsel's misrepresentation the pretrial proceedings would have been different.
(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

In Support of Memorandum of Law

(b) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☒

(2) If you did not raise this issue in your direct appeal, explain why:

No direct appeal rights

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐   No ☒

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:   n/a

Name and location of the court where the motion or petition was filed:     n/a

Docket or case number (if you know):  n/a

Date of the court's decision:  n/a

Result (attach a copy of the court's opinion or order, if available):   n/a

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐   No ☒

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐   No ☒

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐   No ☒

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:   n/a

Docket or case number (if you know):   n/a

Date of the court's decision: n/a

Result (attach a copy of the court's opinion or order, if available):   n/a

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

No direct appeal rights

**GROUND FOUR:**

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b) **Direct Appeal of Ground Four:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐  No ☐

    (2) If you did not raise this issue in your direct appeal, explain why:

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐  No ☐

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:

    Name and location of the court where the motion or petition was filed:

    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ☐   No ☐

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ☐   No ☐

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

        Yes ☐   No ☐

    (6) If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:

    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court?

If so, which ground or grounds have not been presented, and state your reasons for not

presenting them: The grounds which were not raised at sentencing was due to Petitioner's lack of knowledge and understanding. These issues were a result of Counsel's neglect to present them to the Petitioner. Secondly, pleading of the criminal complaint thus being stipulated in the nature of the Plea Agreement and the appellate rights as only being ineffective assistance of counsel and prosecutorial misconduct which could not be raised until now.

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court

for the judgment you are challenging?    Yes ❑   No ☒

If "Yes," state the name and location of the court, the docket or case number, the type of

proceeding, and the issues raised.

n/a

15. Give the name and address, if known, of each attorney who represented you in the following

stages of the judgment you are challenging:

(a) At preliminary hearing:

Keith L. Kimball, Federal Public Defender - Norfolk, Virginia

(b) At arraignment and plea:

Keith L. Kimball, Federal Public Defender - Norfolk, Virginia

(c) At trial:

n/a

(d) At sentencing:

Keith L. Kimball, Federal Public Defender - Norfolk, Virginia

(e) On appeal:

n/a

(f) In any post-conviction proceeding:

n/a

(g) On appeal from any ruling against you in a post-conviction proceeding:

n/a

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?     Yes ☐ No ☒

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?     Yes ☐ No ☒

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:     n/a

(b) Give the date the other sentence was imposed:     n/a

(c) Give the length of the other sentence:     n/a

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?     Yes ☐  No ☒

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

Time limit of being within the one-year statutory term has been satisfied to proceed with the filing of the 2255 habeas petition.

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of —

(1) the date on which the judgment of conviction became final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, movant asks that the Court grant the following relief:

or any other relief to which movant may be entitled.

_____

**Signature of Attorney (if any)**

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on

(month, date, year).

Executed (signed) on   _/ – 26 · 2017_   (date).

_____

Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

GARTH A. SALKEY
     Petitioner,

                      :

vs.                  :     Criminal Case No.: 2:15cr146

UNITED STATES OF AMERICA
     Respondent.

---

## MEMORANDUM OF LAW IN SUPPORT OF 2255

Now Comes, Petitioner, Garth Andrew Salkey, submits this Memorandum of Law in Support of 2255. Petitioner contends that based upon ineffective assistance of counsel, a breach of his Sixth Amendment pretrial proceeding was committed by his appointed counsel. A breach of the pretrial proceeding resulted in the Petitioner's inability to enter into a plea agreement knowingly and intelligently, The Petitioner contends that counsel was ineffective by giving erroneous advice to induce acceptance of the Criminal Complaint. The Petitioner also contends that counsel lied to him concerning certain defenses and motions that could have been used to challenge the complaint. The Petitioner also states that counsel's representation was so far below standard that the results of the proceeding would have been different (prejudice) had counsel filed and presented motions pertinent to his charge and Criminal Complaint.

Lastly, Petitioner submits an Affidavit (under penalty of perjury) stating his dissagreement with the exaggerated drug

amount being reported in his Pre-Sentence Investigation Report.
Petitioner requested that Counsel provide him with all available
defenses that could be raised challenging the drug amount attributed
to him.  Mr. Kimball informed him that there were no defensed
available, thus, inducing Petitioner to accept a plea that does
not reflect the Petitioner's actual conduct.

As a result of all the aforementioned claims, Petitioner
concludes that if all facts and defenses were presented to him
by counsel, his decision to plead might have otherwise changed
to proceed to trial.

### Pro Se Standard

"On occasions too numerous to count, we have reminded district
courts that when a plaintiff proceeds pro se...a court is obliged
to construe his pleading liberally." McEachin v. McGuinnis, 357
F.3d 197, 200 (2nd Cir. 2004) (citine Weinstein v. Albright, 261
F.3d 127, 132 (2nd Cir. 2001))  This obligation entails, at the
very least, a permissive application of the rules governing the
form of pleadings.  As the Supreme Court has recently observed,
"a pro se complaint, however inartfully pleaded, must be held to
less stringent standards  than formal pleadings drafted by lawyers."
Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L.Ed.
2d 1081 (2007) (per curiam)(internal quotation marks omitted)
"This is particularly so when pro se plaintiffs alleges that
his/her civil rights have been violated." See McEachin, 357 F.3d
at 200.

The Petitioner seeks to invoke this standard of review in
his currently submitted 28 U.S.C. 2255 writ of habeas petition.
The following dissention is related to the standard:

"It is well established that a court is ordinarily obligated to afford
a special solicitude to pro se litigants in civil actions. The rationale
underlying this rule is that a pro se litigant generally lacks both
legal training and experience and accordingly, is likely to forfeit
important rights through inadvertance if he is not afforded some degree
of protection. The solicitude afforded to pro se litigants takes a variety
of forms, most often consisting of liberal construction of pleadings,
motion papers, and appelate briefs. It also embraces relaxation of the
limitations on t he amendment of pleadins, leniency in the enforcement of
other procedural rules, and deliberate, continuing efforts to ensure that
a pro se litigant understands what is required of him. In the context of
the special solicitude ordinarily afforded to pro se litigants, the
appropriate degree of special solicitude is not identical with regard to
all pro se litigants. The Court has sometimes suggested that a Court
should be particularly solicitous of pro se litigants who assert <u>civil</u>
<u>rights claims</u>, and litigants who are <u>incarcerated</u> also receive certain
special solicitude." <u>Tracy v. Freshwater</u>, 623 F.3d 90, No. 1-8-1769-cv.
(2nd Cir. 2010)

Accordingly, the "dismissal of a pro se claim as insufficiently

pleaded is appropriate only in the most unsustainable of cases."

<u>Boykin v. Keycorp.</u>, 521 F.3d 202, 216 (2nd Cir. 2008) The Petitioner

seeks to invoke the aforementioned pro se standard in the presentation

and consideration of submitted 2255 motion and <u>Memorandum of Law</u>

<u>in Support</u>.

### BACKGROUND

On or about May 21, 2015, a search warrant was obtained for

the Meadow Country Road property, which was executed by Suffolk

Police Department due to four purchases of heroin by the Petitioner

via confidential informants.  An arrest warrant was initially

obtained due to the quantity of heroin and packaging material

consistent with distribution in the Defendant's possession.  A

federal complaint was issued by the U.S. Attorney's Office for

one (1) count of violation of 21 U.S.C. § 841(A)(1) and (b)(1)(A)i

Conspiracy to Distribute and Possess 1 kilo or more of heroin.  A

detention hearing was held on September 25, 2015.  The Defendant

was subsequently denied bail, and detained at the Suffolk Regional Jail.

3

Center where he remained until his Plea Hearing on November 17, 2015.
On March 10, 2016, Defendant was sentenced to an active term of
135 months, and remanded to the custody of the Federal Bureau of
Prisons.

Ground One:   Ineffective Assistance of Counsel - Erroneously
              Advised Defendant Which Induced Him To Accept The
              To Criminal Complaint.  Failed to Adequately Assist
              Defendant.

Standard:     Strickland v. Washington, 466 U.S. 668, 694, 80 L. Ed.
              2d 674, 104 S. Ct. 2052 (1984):

              A defendant must show: (1) that his "counsel's
              representation fell below an objective standard of
              reasonableness" (performance), and (2) "that there is
              a reasonable probability that, but for counsel's
              unprofessional errors, the result of the proceeding
              would have been different." (prejudice)

Claim:   The Petitioner contends that his initial counsel, Keith
L. Kimball, representing him throughout his pretrial proceedings
instructed him to sign and accept Criminal Action 2:15cr146 of the
Criminal Information, Count One of Conspiracy to Distribute and
Possess with Intent to Distribute Heroin.  The charge included
conduct as to th e timeframe and amount of heroin distributed as
well as those in whom he conspired with to acheive this act.

        The aforementioned conduct within the Criminal Information
thus triggered the statute of ten (10) years to life without
parole.  Throughout the pretrial, the Petitioner, subsequently
spoke to Mr. Kimball and at times his counsel's private detective.
The Petitioner states that both consistently encouraged him to
plead to all charges as it being the best thing to do.  Additionally,
he asserts that his attorney stated he would work on the best
sentence that he could for him, further compelling him to accept
the plea.  "The defense counsel have responsibilities in the plea

4

bargain process that must be met to render the adequate assistance
of counsel that the Sixth Amendment requires."(L.Ed Digest: Criminal
Law § 46.4) "A criminal defendant requires effective counsel during
plea negotiatings.  Anything less might deny a defendant effective
representation by counsel at the only stage when legal aid and
advice would help him."

The Petitioner's counsel advised him to plea to the
Criminal Information  (as this being the best thing to do), without
considering or advising him of counter defenses against such conduct
mentioned in the Criminal Information.  This shows that counsel
provided the Petitioner with inadequate assistance due to the fact
that his conduct did not match that of the charges.  This fact
was not lost to Mr. Kimball because an email (Exhibit 1) from him
to the probation officer quoted him as mentioning his concern with
the drug amount being over exaggereated.  Mr. Kimball's concern
with the drug amount contradicts his advice to Petitionerto just
plead, not just to the charge but to the Criminal Information
forfeiting any other chances to dispute the charge as an whole.
An action like this is usually used for some benefit to the plea
negotiations given the fact that the grand jury process was for-
feited, yet there was nothing of the sort in Petitioner's case
though he continuously disputed the drug weight to his counsel.
Mr. Kimball's only advice was for the Petitioner to plead guilty
without any regard to the fact that his actions did not adequately
conform to the charge as illustrated in the Criminal Information.

The Petitioner asserts that the conduct and drug weight
could not have been attributed to him had he challenged its notions.
His counsel simply instructed him to give up all his rights and

just plead.  Without any other alternatives given by his counsel
the Petitioner was forced to plead.  This was surely not the best
nor the only option Petitioner could have taken.  The Petitioner's
inquiry and discontent as expressed to his counsel should have at
least compelled Mr. Kimball to consider other options with him
giving the Petitioner the choice to act, instead of, persuading
him that this was the only thing he could do.  Counsel's advice
was only meant to induce the Petitioner to plead without so much
of a thought of his best interest.  This resulted in the Petitioner
pleading to charges that in no way reflects his actual conduct
triggering a statute higher than that should have been attributed
to him.

        The Petitioner is a 64 yr. old man who had no knowledge
of the Federal System, though he has had legal run-ins with the
law on the state level.  His sole reliance on counsel's advice
was evident in his early plea and forfeiture of any appeal rights
to contest any sentence imposed, yet agreeing that the U.S. Attorney
could appeal any sentence they deemed not fully in tact with their
punishment.  This can in no way be presented as a logical choice
and only illustrates the Petitioner's unintelligent thus unknowing
agreement to the plea.

        "A defendant relies upon his attorney's advice in
deciding whether to plead guilty." (Ross v. Warden John S. Wolfe,
U.S. Dist. Lexis 62395, Civil No. JKB-11-6672, 4th Cir. May 2013)
This segment in all its contents defines the seriousness of the
Defendant's claim against his counsel.  Mr.Kimball's advisement
was clearly a miscarriage of justice.  As claim 2-3 will illustrate
in its own grounds that counsel had numerous routs he could have

6

instructed the Petitioner to take.  His advice was only to induce the Petitioner to plead and forfeit his appeal rights.

The Petitioner asserts that his admitted requisition to his attorney was only to the four (4) subsequent control buys (refer to Plea Hearing page 25, 11-24) ,and the ounce obtained at his residence during the execution of a search warrant. He continously disputed the drug weight mentioned in the charge. He maintains that there is no way such an amount could have been attributed to him... yet his attorney advised him still to plea.not sharing any other alternatives with him, giving him no other choice but to plead. This advice was obtained even when Mr. Kimball himself saw that many disparities existed.  The Petitioner feels that he should have been fully informed of any and all defenses available to him by law.

U.S. v. Richardson, 347 U.S. at 772, held that recognizing incompetent advice from an attorney as the proper grounds for federal habeas attack on the voluntariness of a guilty plea." U.S. v. Fisher, 711 F.3d 460, 2013 WL 1286985, at 4th Cir. also states that "Recognizing defense counsel's misrepresentation undermine the validity of a guilty plea.  Petitioner was deprived of his due process rights because his lawyer provided faulty advice to induce him to accept the plea agreement.  The slack performance and incorrectly communicated information by the attorney deprived the Petitioner of a substantive right.  A look at the evidence (as mentioned in Claim 3) derived from the transcript, cooperating witnesses, discovery, and/or the Criminal Information can in no way informatively validate Mr.Salkey as responsible for one (1) kilo or more of heroin.  His counsel even undermines the

7

credibility of the C.I.'s during the detention hearing. (pages 9 -14) So why would counsel advise him, without any mention of his right to contest these theories to just plea knowing he had the right to do so. Counsel's only objective was to induce the Petitioner to accept an exaggerated plea agreement to forfeit any chance of disputing it.

The Petitioner asserts prior to his plea colloquy, that he asked his attorney, Keith Kimball, what was he suppose to do during the Plea Hearing. He also asked his attorney if he could voice his objection about the conduct in the case, and the drug weight attributed to him. The Petitioner contends that his attorney instructed him to answer all questions that the judge asked him with a "yes". His lawyer stated if he brought up anything about the proceedings he would be in jeopardy of angering the judge. His attorney stated that he could not voice another objection in reference to his plea, even when the judge asked him did he have any problems with the proceedings of the Criminal Information. He was instructed to answer "no" to make sure he did not anger the judge.

The Petitioner states there was no other option for him at the present time, and that he was only to wait for his sentencing. The Petitioner's attorney allowed him to proceed without objections. As such the Petitioner is asking that he be remanded and that he be allowed to exercise his pre-trial rights.

The former Solicitor General points out that "the vast majority of lower courts considering claims of ineffective assistance in the plea context have distinguished between counsel who remain silent and defense counsel who give affirmative misadvice" as illustrated in the Petitioner's case.

The only remedy is explained in Strade v. Garrison, "When erroneous advice induces the plea, permitting a defendant to start over again is the imperative remedy for the Constitutional deprivation."

Ground Two   Ineffective Assistance of Counsel - Lying to the
             Defendant by asserting that there was no way to
             challenge the drug amount and that pretrial motions
             are not available without trial, withholding of
             material facts.

Standard:    Strickland v. Washington, 466 U.S. 668, 694, 80 L. Ed.
             2d 674, 104 S. Ct. 2052 (1984):

             A defendant must show: (1) that his "counsel's
             representation fell below an objective standard
             or reasonableness" (performance), and (2)"that there is
             a reasonable probability that, but for counsel's
             unprofessional errors, the result of the proceeding
             would have been different." (prejudice)

Claim:    The Petitioner contends that ineffective assistance of

counsel was administered by his counsel, Keith L. Kimball, when

he misinformed him of the availability to challenge the drug

amount or the existance of any pretrial motions to contest the

amount.   The Petitioner claims that his counsel advised him that

only through trial in which he had no way of winning could he

challenge the drug weight.   The Petitions asserts that had his

counsel told him that there were in fact avenues he could have

taken to contest the drug weight, he would have insisted that such

measures be taken.   Due to his counsel's untruthful advice and

withholding of material facts highly prominent to his due process

of law and entitlements.   The Petitioner was forced to accept all

such conduct he deems disputable.

     The Petitioner asserts that he should have been

correctly informed of all or any of the pretrial rights available

to him.   He explains that had his attorney been truthful with

him the pretrial proceeding would surely have been different.

As explained in the first claim, there were numerous examples of

other cases  where: (1) the indictment was challenged without

contesting the plea of guilty.  "One participant in a multi-

participant ...conspiracy may be held accountable, for sentencing purposes, for a greater or lesser amount than other participants." U.S. v. Gilliam, 987 F.2d 1009 (4th Cir.   ) U.S. v. Goff, 407 F.2d 1441 (4th Cir. 1990)  (2) The PSI Report could have been challenged to object to its holding on the drug weigh.  U.S. v. Terry, 416 F.2d 157.

Lafler v. Cooper - 182 L. Ed 2d 398, states, "A defendant must show that but for ineffective advise there is a reasonable probability that the plea offer would have presented in court and that prosecution would not have withdrawn it in light of intervening circumstances, and the court would have accepted its terms, and that the conviction or sentence, or both would have been less severe than that imposed. (L. Ed. Digest: Criminal Law § 46.7)

In the Petitioner's case a motion or petition would have been presented in Court attacking against the drug weight, in which, the prosecution could not have withdrawn or disallowed, for it was the Defendant's right under the letter of law to file one. The Court would have no other choice but to accept the terms of a hearing , and the results of the proceedings in theory should have been less severe. Petitioner asserts that his attorney should have told him the truth about the availability of this process, and that had he known he would have proceeded in that fashion.

L.Ed Digerst: Criminal Law § 46.4, 46.7 quote: If a plea bargain has been offered (yet in Salkey's case if a pretrial motion was available or entitled to him) and if that right is denied due to counsel's ineffective advice, prejudice can be shown if the results of the judgement, or sentencing was more servere than otherwise ·

10

The Petitioner signed for a statutory term of 10 years
to life in prison to conduct he disputed. Petition consulted with
his attorney about possible ways to challenge  the disputed conduct.
Mr. Kimball falsely explained that there was no way to object to
the conduct or drug weight which compelled the Petitioner to accept
the exaggerated conduct and plea of ten to life.

An evidentiary hearing is merited regarding this issue.
North Carolina v. Alford,  400 U.S. 25, 31, 81 S.Ct. 160, 27 L. Ed
2d, " A guilty plea must be voluntary and intelligent choice among
the alternative courses of action open to the defendant." Brady v.
U.S., 347 U.S. 742 L.Ed 2d. 747, (A guilty plea not only must be
voluntary but must be a knowing, intelligently made act done with
sufficient awareness of the relevant circumstances and likely
consequences.) Also again: Strade v. Garrison, 611 F.2d 61 (Although
a defendant need not be informed about his parole eligibility date
prior to entering a guilty plea, when he is grossly misinformed
about it by his lawyer, and relies upon that misinformation, he
is deprived of his constitutional right to counsel.) Ostander v.
Green, 46 F.3d 347 (However, where the client asks for advice
about a "collateral consequence and relies upon it in deciding
whether to plead guilty, the attorney must not grossly misinform
his client about the law.)

Mr. Kimball lied to Mr. Salkey about his judiciary
entitlements and withheld the fact that he could by right
utilize preliminary avenues such as motions, objecting to the PSI
and or arguments challenging the language in the complaint without
contesting the plea.  Counsel's actions clearly establishes
prejudice in violation of the Petitioner's due process of law.

11

Both the Strickland and the Padilla standards are achieved in this case. The only remedy as stated above is to allow the Petitioner his chance to challenge the drug weight in his offense, in which he was denied.

Ground Three: Ineffective Assistance of Counsel - Representation fell so far below standard that if it had not been for Counsel's misrepresentation the pretrial proceedings would have been different.

Standard: Strickland v. Washington, 466 U.S. 668, 694, 80 L.Ed. 2d :674, 104 S. Ct. 2052 (1984):

A defendant must show: (1) that his "counsel's representation fell below an objective standard or reasonableness" (performance), and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (prejudice)

Claim: Tollett v. Henderson, 411 U.S. 258, "Even defense counsel misrepresentations can undermine the validity of a plea."

Ostrander v. Green, "The correct test for guilty pleas induced by ineffective assistance was that the defendant must show only that there was a reasonable probability that he would not have plead guilty." Ferguson v. Georgia, 365 U.S. 570, 593-596, 5 L.Ed, 2d, 783, 81 S. Ct. 756.."Counsel, however, can also deprive a defendant of the right to effective assistance simply by failure to render adequate legal assistance."

12

Following the advise of counsel, on November 17th, 2015, Garth Salkey pled guilty to violation of United States Code, Section 846, and was sentenced on March 10th 2016 to 135 months of imprisonment.

Because we believe trial counsel's performance fell below a reasonable standard, (see Washington v. Strickland, 466 U.S. 668), Mr. Salkey seeks review under 28 U.S.C Section 2255. U.S. v. Luck, No 09-6641 (4th Cir____) " Questions of ineffective assistance of counsel are governed by the Supreme Courts decision in Strickland v. Washington, 466 U. S. 668 (1984)." There, the court detailed the two-prong approach that courts must use when deciding ineffective assistance claims.

The defendant bears the burden of proof as to both prongs of the standard. First, the defendant must show that counsel's representation "fell below an objective standard of reasonable representation," as measured by " prevailing professional norms" Id. at 668. Courts should be deferential in this inquiry and have "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" Id at 668. The defendantmust therefore overcome the presumtion that the representation "might be considered sound trial strategy" Id (citation and internal quotation marks omitted). Second, the defendant must show "a reasonable probabilty that, but for counsel's unprofessional errors, the result of the proceeding would have been different" Id at 694. A reasonable probability, in turn, is defined as "a probabilty sufficient to undermine confidence in the outcome."

13.

## NO FACTUAL BASIS

## TO SUPPORT GUILTY

## PLEA

It is difficult to hold that had Mr. Salkey been properly
advised as to the inadequacies of the underlying facts of the
case, that the government would have to prove his alleged conduct
beyond a reasable doubt at trial, Mr Salkey would not have plead
guilty.

During a detention hearing, the government outlined it's case
to include the statements from number of witnesses all of whom
are known drug addicts, cooperating witnesses that are seeking
less stringent outcomes of there senetence, and testimony of
drug agent, Gary Parker.  It seems clear that counsel did not
investigate the credibilty of the governments witnesses, some
who are know felons and could not be located subsequent to
release.  Several witnesses lived at Mr. Salkey's residence
at the time it became the subject of a search warrant, while
others simple took flight. (see detention transcript hearing)
Crim Case #2:15cr-146, pp 6-8, also, United States v. Kinnard,
150 U.S. App D.C. 386, 465 F. 2d 566 (1972).

The record of the detention hearing in the district court
refelects that the government would seek to offer (4) controlled
buys made by the same cooperating witnesses and felons, in
addition to (2) other controlled purchases to support the charge
brought against Mr. Salkey. The cumlative of said purchases
not exceeding 6 ounces, although the government did declare that
according to the affidavit, coopoerating witness #1 supposedly
purchased 16 to 18 grams of heroin weekly... and observed a

14.

delivery of [p]erhaps 5 ounces of heroin. Id at 9.

Noteworthy is, the cooperating witness fail to provide a time-line as to the meaning of weekly; i.e.;,how long such purchases may have lasted, or whether it may have just been two weeks. Because these estimated drug weights are not so estimated by an expert, but rather by a convicted herion addict, without more, and that same directly contributed to the government's theory for the charge ultimately brought against Petitioner, violates his Due Process rights.

By his own admissions, Gary Parker was not present at the location of the purchases where the (4) controlled buys actually occurred. As a result, he was unable to check the informant for items he may ahve had on his person, and items he should not have had on his person durine the transaction and to receive the heroin purchased to be properly entered into evidence at that time. The recording device was managed by the informant [u]nsupervised, and the device allegedly malfunctioned. As United States v. Kinnard, 150 U.S. App. D.C. 386, 465 F. 2d 566, 570-571(1972), points out an addict/informer faces the immediate threat of being jailed and thereby kept from access to the drugs to which he is addicted, as well as the prosepect of a long prison sentence and possible retaliation from variuos persons in the drug trade. These factors substantially increase the danger that the addict/informer may color his testimony so as to place guilt on the defendant.

Q: Agent Parker, I want to direct your attention to the controlled buy set forth in the affidavit at paragraph 20. A. Yes, sir.

15.

Q. All right.  The informant that was used for these
controlled buys was the same informant as used for all of those
controlled buys, correct?

A. That's correct, sir.

Q. All right.  That was not video recorded by law enforecemnt
correct?

A. I was not there, sir, at any of the (4) buys, so I would
have to read-- I believe there was some recorded and some were
not.  I thought all were, and there may have been a malfunction.
I am not sure.

Q. Okay. Now, the video recording device, was that operated
by law enforcement, or was that only informant?.

A. Only informant.

Q. Only informant.  And did that equipment also have audio
capability?

The agent in charge of the investigation was not present
at any of the (4) controlled buys, he would not be able to record
notes from [his observation at the event and would have to rely on

        the notes crafted by other officers to complete his affidavit;

    his testimony evidencing such unfamiliarity with what happened

    at those events:

    Q. You reviewed the reports that were prepared by the Suffolk

    Police Department?

    A. I did.

    Q.-- in preparation for you obtaining this affidavit when you

    swore out the complaint, correct?

    A. Yes Sir.

                            16.

Q. So when you received thoses police reports and spoke to the
officers involved, they told you all of the controlled buys
were recorded, audio, correct?

A. Yes, Sir. I don't have it in front of me, but I believe they
were.

Q. Okay.  You're just not sure about all (4) of them?

A. That's correct.

(see detention hearing, p 7)

Petitioner questions whether the district court erred in
allowing evidence of controlled buys as offered by the government
in light of the aforementioned, (a) the officer in charge of the
investigation was absent at all of the (4) buys, and (b) where
the electronic recording device being under the sole control
of the cooperating, convicted heroin addict, malfunctioned at all
such critical times.

That being said, it seems safe then to question where the
video and recording device malfunctioned?  What did the officers
upon whose notes police officer Gary parker relied for the
information in the crafting of his affidavit?  What did he see
and hear at and during the transactional phase of the (4) control
buys?  Thus, because the evidence showes they- the police who
were at the controlled buys- heard and saw nothing as a result
of the device's malfunctions, what did they write and (c) the
government in light of the known inherent behaviors of addict
informants, has further failed to remedy the foregoing as
pertinent, and offer such evidence that the informant even under

17.

those circumstances was reliable, that for example, the officer
may have worked with him directly or before.

Accordingly, the district court should have conducted an
inquiry into such circumstances as (1) the resulting impact
if any due to the absence of the agent in charge of the invest-
igation at all the control buys, (2) what were the remedial
steps taken in light of the interruption in the flow of evidence
from an unsupervised  convicted herion addict performing at
the direction of an absent officer in charge, where the recording
and video device malfuntions.  Kinard Id.

The government also provides that mr. Salkey recruited his
son Christopher Salkey into a conspiracy with him to violate
21 U.S.C. Section 846, and charges that the conspiracy ran from
May 2012, and continuously up and through May 2015.  There has
been no evidence presented whatsoever, circumstantial or other
suggesting an agreement of any type with a goal of one kilogram
of heroin.  But in December, 2012, mr. Salkey went to jail for
one year.  His role in any conspiracy effectivley ended.  The
government recognizes a [s]ale during his incarceration though
not in furtherance of a conspiracy.

Indeed, the government also recognizes that it is during
his incarceration though not in furtherance.  Explicitly, this
is during this interval that Christopher Salkey (hereinafter,
Christopher) began to sell herion, and receive "herion from his
own source of supply," (plea transcripts, p #25, and ran a
[p]arallel business.

But even assuming a conspiracy, Christopher's own conduct
shortly thereafter his father's incarceration in 2012 would

18.

clearly turn on the goal set for the charged conspiracy, as he
now tends to his own business. By the government's own
assesment, Christopher is receiving heroin from "his own source
of supply, and runs a parallel business from the same house." 
This demonstrates a high degree of independence, and certainly
not in line with the focus of the conspiracy claimed and out-
lined by the government, as Petitioner's role is effectively
ended. See Plea transcripts at 25, (During this time frame
his son, Christopher started receiving heroin from his own
source of supply). After receiving heroin from his own source
of supply, Christopher would add cut, cap it up and then sell it
to various customers. Christopher also supplied heroin to the
other codefendants, Joseph Adelman and David Mclain, and they
in turn, would distribute the heroin to others.

Next, the sentencing transcrpits and proceedings show that
the government by necessary implication acknowledge that shortly
after Petitioner's imprisonment in 2012, his role in the claimed
conspiracy ended, as Christopher then begun the information of
his [o]wn business such that it- the government could thereafter
identify, recognize and state for the record that "Mr. Salkey
gets out of prison, and now his son runs a parallel heroin

business... two family members selling heroin from the same
house." See, sentencing transcripts. p 16.

Such acknowledgement clearly recognizing no indication of
a previous or existing conspiracy. Nonetheless, it ultimately
laid out its charge to include a target quantity of one kilo
of heroin, though nowhere in and from its investigation can
it produce evidence of drugs present and or available to the
Petitioner in excess of one ounce of heroin, as neither of the

19.

cooperating witness presumably purchased any more than (1)

gram of heroin at a time-even during the claimed control buys. See United States v. Fells, 920 F. 2d 1179, 1184 (4th Cir. 1990). A defendant's role in the offense is determined by the entirety of his relevant conduct, not simply by the count of conviction.

Christopher is recognized as having established his own line of business: accordingly, any drugs claimed to have been sold by the Petitioner during his incarceration should not be construed as being in furtherance of a conspiracy. U.S. v. Wilbourn, ___F.3d__(7th Cir, 2015) No. 13-3715. The district court relied on two phone calls, neither of which addressed drug distribution in anything but the most attenuated sense. There was no evidence that defendants actions in prison had any effect on the operation of the conspiracy.

Repeatedly throughout the proceedings in the district court the government describes evidence that fall far short of support for charge ultimately brought against Garth Salkey. Given the small quantities of heroin described throuhout the proceedings in the district court, and by its own description of the actions investigated, it is clear that the claim of conspiracy has not been shown to have existed for to violate 21 U.S.C. Section 846. Certainly not with an intended goal of one (1) kilogram of heroin. In United States v. Guinta, 925 F. 2d 758 (4th Cir. 1991), the court emphasized, Proof of a conspiracy may of be by circumstantial evidence; it need not and normally will not be direct evidence. United States v. Brown, 856 F 2d 710,711-12(4th Cir, 1998). But circumstantial evidence that proves no

20.

more than assoiciation between two persons, even if one has a
fixed intent known to the other to commit an unlawful act, is
not sufficient to permit the interference of the requisite
agreemnet between the two to act in concert to commit the act.
See United States v. Tyler, 505 F 2d 1329, 1329 (5th Cir. 1975);
agreement between the two to act in concert to commit the act;
Miller v. United States, 382 F. 2d 583, 587 (9th Cir. 1967).
Because conspiracy requires agreement between at least two
persons to take concerted action, if the purposes of alleged
co-conspirators are different, though both are aimed at un-
lawful goals, there is no conspiracy. See United States v.
Mancillas, 580 F 2d 1301, 1307(7th Cir. 1978). Therefore, when
one of two alleged co-conspirators merely pretends to agree,
the agreement requisite cannot exist. United States v. DeBbright
742 F. 2d 1196, 1199(9th Cir. 1984).

In sum and based on the foregoing herein and otherwise as
pertinent, Petitioner holds that had his trial counsel carefully
reviewed the evidence, he would have seen there was no conspiracy
as claimed by the government as his client's actions did not rise
to the level of a violation of 21 United States Code, Section
846.

Counsel further would have observed the government's own
admission through its description of events and situational
circumstances, while there were drug sales for the purposes of
Section 814, there was no agreement for section 846. And on
the basis of a misguided backdrop, counsel advised Petitioner
to enter a plea of guilty to the charge. Thus, Pettitioner's
plea did not result from a well rounded review of the evidence

for all viable options going foward, and as was not knowingly made.

WHEREFORE. for all the reasons herein and otherwise, Petitioner prays that this Court will take such actions in furtherance of justice, and vacate the conviction.


Date: /- 26- ,2017                          Respectfully Submitted,

                                            Garth A. Salkey


22.

EXHIBIT (2)

## STATEMENT OF FACTS

I, Garth Salkey, herein "Affiant" a living breathing man, being
first sworn, depose, and declare by my signature that the following
facts are true, correct, and complete to the best of my knowledge
and belief.

1. I, Garth Salkey, states:  At no time did my attorney, Mr. Kimball
explain to me the difference between pleading to a Criminal
Complaint and a Indictment.

2. I, Garth Salkey, states: that my attorney, Mr. Kimball, advised
that there were no way for me to challenge or contest the conduct
nor the drug amount as illustrated in the Criminal Complaint before
or after the plea hearing.

3. I, Garth Salkey, states: that my attorney, Mr. Kimball, advised
me that there were no pretrial motions that I could file to
contest the conduct and the charge prior to me signing the plea
agreement.

The facts above are made under penalty of perjury pursuant to
28 U.S.C. § 1746.

Date: January 25 2017                           Garth A Salkey
                                                _____
                                                Garth Salkey

**EXHIBIT 1**

From: Keith Kimball [mailto:Keith_Kimball@fd.org]
Sent: Monday, February 29, 2016 10:14 AM
To: Dougherty, Kathleen (USAVAE); Muhr, Bill (USAVAE)
Subject: U.S. v. Garth Salkey - PSR

Katie - Bill: Sorry for the delay in sending you both this email.

The GL range is currently 188 to 235 months (offense level of 36, CHC = 1).

I have some issues with the drug quantity being exaggerated somewhat. But we agreed to the BOL in the plea agreement so any objection I have would not change that.

I have raised the following objections to the PSR:

(1) 2 level enhancement for "maintaining a drug premises" under USSG Section 2D1.1(b)(12)
(2) 2 level enhancement for "destroying evidence" per USSG Section 2D1.1(b)(15)(A)(ii) and (D)
(3) 3 level enhancement for an aggravated role per USSG Section 3B1.1(b).

My hope is that we can resolve these objections. To that end, I will concede the "drug premises" enhancement (although the cynic in me attributes the addition of this enhancement in the drug guidelines as a counter by DOJ/the Sentencing Commission to the 2 level reductions in first the crack cocaine guidelines and most recently "drugs minus two" - b/c really unless a drug trafficker is standing on a corner selling, this enhancement can apply in almost all substantive drug cases). Sorry, I digress.

My chief quarrel is the "aggravated role" enhancement and the "destruction of evidence" enhancement.

I will start with the easier of these two - the destruction of evidence. Upon information and belief, the probation officer - Kristie Milby bases this enhancement on either Chris Salkey's act of flushing heroin down the toilet or Mr. Salkey's act of throwing heroin out his bedroom window shortly before the execution of the search warrant at the Suffolk residence. See Paragraphs 32 & 41. Chris' act was in no way foreseeable to Mr. Salkey and he should not be penalized for his son's actions. I would also add that there is no evidence that Chris flushed the heroin down the toilet in response to a directive from Mr. Salkey.

Kristie may also be basing this enhancement on Mr. Salkey's throwing heroin out his bedroom at the time of the execution of the search warrant.

I could not find any cases specifically dealing with Section 2D1.1(b)(15)(D) - probably because it is a new addition to the drug guidelines. However, looking at cases under the "Obstruction of Justice" section - 3C1.1, Mr. Salkey's act of throwing the drugs out the window do not qualify since the drugs were quickly recovered and did not materially affect the investigation. In U.S. v. Kenyon, 7 F.3d 783, 786 (8th Cir. 1993), the defendant flushed drugs down the toilet and this act delayed the investigation for four months. Id. The court considered the fact that "If . . . a defendant destroys material evidence 'contemporaneously with arrest' and has not thereby caused a 'material hindrance' to the investigation, prosecution, or sentencing, then his conduct is, by itself, insufficient to justify a two-level adjustment for obstruction of justice." Id. The court held that even though the flushing of the drugs happened contemporaneously with arrest, the act delayed the investigation for four months which constituted a material hindrance." Id. In U.S. v. Garcia, 34 F.3d 6, 12 (1st Cir. 1994), Garcia threw drugs out of the window of a car. Because the police were never able to recover the drugs, the court found that the absence of that evidence did materially hinder the investigation. Mr. Salkey's act of throwing the drugs out of the window did not hinder the investigation in any way as they were quickly, and easily, recovered by the police. In addition, they were not altered so as to prevent or affect the testing of the substance.

**EXHIBIT 2**

## CERTIFICATE OF SERVICE

I, <u>Garth Salkey</u>, do hereby state under penalty of perjury that a true and correct copy of this motion has been sent from Petersburg Federal Prison Camp Institution's Mailing Room on this _1-26_ day of January 2017.  Additionally, under penalty of perjury, I hereby further state that a true and correct copy of this motion has been sent to the following :


Clerk of Court
U.S. District Court
Eastern District of Virginia
600 Granby Street
Norfolk, Virginia 23510




Date:___1 - 26 -___, 2017                    Garth Salkey

GARTH SA

FEDERAL Correctional Institution

P.O Box 1000

Petersburg, V.A. 23804



RICHMOND VA

WED 01 FEB 2021

⇔86171-083⇔
Clerk Of Court
Eastern Dist. of Virginia
600 Granby ST
Norfolk, VA 23510
United States

INSPECTED
U.S. MARSHALS